We will hear argument next in No. 232140, Curtin v. United Trademark Holdings. May it please the court. May it please the court. The board initially and correctly applied this court's decision in Ritchie to determine that Professor Curtin is entitled to oppose. She had, as the board found, a real interest in the proceeding and a reasonable basis for that. After bifurcating the case for trial, the court then changed position. The board said that the framework from Lexmark applies both sell to board proceedings. And based upon that, Curtin is not entitled to oppose registration of UTH's trademark. That's wrong for three reasons. First, the Lexmark framework doesn't apply to opposition proceedings. The court's decision in Ritchie does. Second, even if it applies, Corkmore says that. And I'm sorry, and that's because the 1125 action was a cause of action in court, and opposition is a cause of action to trigger an administrative proceeding or for additional reasons, or for different reasons. Because it is an administrative proceeding, not a cause of action in court, the way that the court was addressing it in Lexmark. But in Lexmark, wasn't the court construing the 1127, which applies to the chapter as a whole, which includes 1063 as well as 1064? It was discussing the interests of the Lanham Act. 1127 discusses the interest the Lanham Act was intended to protect. And that's that part of the court's discussion. But the overall discussion from the court in Lexmark is about causes of action. And that's where the zone of interest test and the proximate cause analysis come from is what was traditionally called or previously called prudential standing. And it's that line of cases that then spawned this. And all of that discussion is about the limits on courts. Going back to whether you're talking about the Clayton Act, when they first were coming up with the zone of interest test, it was about whether or not they have a private right of action in court. Same with the APA. They were trying to determine whether or not there were limits on judicial review. And that's where the zone of interest test comes up as well. So all of those parts are about the limits on the judiciary and what happens in court. And that's the discussion that then the court takes and changes the nomenclature for it from prudential standing. So I think your brief makes reference to the body of law that recognizes that Article III requirements don't apply in agencies, and they do apply in courts. And that's an important difference. Why should language that authorizes certain people to make certain challenges, whether it's before an agency or before an Article III court, be subject to a different kind of analysis, all subject to the general label that you have to figure out whether you're one of those people. You have to be within the zone of interest of statute defining the wrong that, in either case, whether it's a go-to-court or go-to-an-agency. So there are particular interests that motivate the limits on who can participate in a variety of different actions. The courts have a very particular view on that. That's where the zone of interest test comes in. That's where approximate causation comes in. What was traditionally prudential standing is linked into what the common law had on limits on civil remedies in court. And now, there are limits, and there are interests on who can participate before an administrative agency. But what we're talking about are the interests unique to those different bodies. The language itself is any person who would be harmed or believes they would be harmed may file a notice of opposition. That's very broad. And the court, you know. Well, that's not broad enough to have allowed static control to make its claim against Lexmark. Yeah. Well, so. Even though the plausible basis, even reasonably believing that they were. Right. But in Lexmark, what they were doing is applying a body of law on the limits to actions in federal court. The court explained in Bennett v. Speer and a variety of others that what you're talking about are. And in your view, if you were right that you could bring the opposition in the agency, and suppose you lost, what then? Lost on the. Lost before the agency. You want to go to court, right? Yeah. On the same cause of action or what? Or a different cause of action? Well, then it would be an appeal from the board's determination. And does any zone of interest testify then? I wouldn't think so, no. It would be just an appeal from the administrative agency. So you'd still have to have Article III. Correct. So let me ask you kind of on the substance. On its face, there's a kind of plausible claim that a consumer of a mark holder product could, in fact, be harmed by higher prices or diminished quality or variety if that mark holder is invoking its mark to suppress others from offering you a product. And it's plausible on its face that if you say that that potential harm would be alleviated if you can show that this mark is actually invalid. Is there any case where that consumer standing, and here I'm using standing in the old fashioned sense, not to be limited to Article III. A has been discussed, but B has been recognized. And my second question is going to be, not just in trademark law, what about in patent law? Other than that there's a decision from the board, Flanders too, or the guitar pickup, and I believe a consumer wanted to challenge in that proceeding. That's one that I can think of, but I can't think of others where a consumer has been in. But that's the one decision that comes to mind. And are you familiar with patent law to some extent? To some extent. So the patent law analogy to this, at least one that I began thinking about, is a person who wants to buy a particular product, as far as I know, tell me if I'm wrong, can't bring a lawsuit against the patentee saying your patent is invalid and you're out there enforcing it against people who are thereby deterred from creating the same product that I would like to buy. It's a plausible chain of action to harm. As far as I know, that doesn't occur, does it? Why should this be any different? Well, first, this is a proceeding before an agency, as part of the administrative process. So the analogy would be comments on rules, or comments on a variety of things. That happens all the time, where a party. I don't think that's a very good analogy. I mean, the analogy to patent law might be if somebody could file an administrative action at the PTAB or something like that. But there are the particular provisions that govern that, who may file those in the PTAB. I mean, there's a difference between notice and comment rulemaking and agency adjudications. And this is an agency adjudication type case, not just notice and comment rulemaking. Well, except that it's, I would say, cancellation proceeding may be closer to an adjudication, where this is part of the process of getting the mark in the first place. You have to file an application. Examiner has to look at it. It gets published to the public to see whether or not those interested want to comment, provide their views on it. And it's only after that process is complete that the mark is either registered or not registered. So that looks a lot more like a notice and comment proceeding than it does. Anyone can just jump in and say, I'm injured, or I see a likelihood that I'm going to be injured in the next little bit by your using the mark. Would a patent-specific, I bet it's a inter-parties review proceeding, which any person, except I guess the government itself, can initiate, would that be a relevant analogy? Because you don't have to have, yeah, I mean, a consumer can file a challenge to the validity of a patent by initiating an inter-parties review? I will say, I believe it's broader than what is in court. But I haven't studied to know exactly what the limits are on that analogy. But in trademark world, whether, including state common law trademark, has it ever been the case that the purchaser from a mark holder has been recognized as one of the people that can bring a lawsuit to, and put aside the distinction now between agency and court, to challenge the validity of the mark that the mark holder is wielding in order to suppress competition? I'm not aware of a case on those grounds, no. But again, going back to the standards for court and for agencies are different. And that's what this case is really about, is who can participate in that initial process of getting the mark. And as we indicate, we think that it's broad enough. Well, doesn't that suggest Corker-Moore is wrong? Well, we do believe that Corker-Moore was decided wrong in calling it a cause of action. But we think that there are distinctions between a cancellation proceeding and an opposition proceeding that are relevant. Cancellation proceeding does look a little bit more like an adjudication. So if we're not, I mean, obviously we can't overrule Corker-Moore and have to go on bond. So your argument depends on us looking at any person on cancellation different from any person in opposition. Yes. And the context matters. The context in which it arises, I think, matters when you're looking at the overall process. And there are linguistic differences, too. Cancellation's talking about if you are injured or will be injured. And an opposition proceeding is you would be injured. It's more subjunctive, hypothetical, not necessarily having the closeness and connection that you would expect in something else. See, I'm in my rebuttal. So I'll reserve the remainder of my time for rebuttal. Actually, let me just ask you. And I want to ask the two other counsel we're going to hear from, too. Is it your understanding that if there's an affirmance of the dismissal of the opposition that there is still a mechanism short of a cancellation petition for the PTO to decide whether it really, really ought to issue this registration? I believe that there is still authority within the agency to visit. Yes. May it please the court. Eric Pelton for appellee. Appellant here is a mere intermeddler and does not have an entitlement to a cause of action to oppose the trademark application. As counsel acknowledged, there is no authority for a purchaser or consumer to challenge a trademark. Lexmark is the clear standard that applies here. And when applied, Lexmark makes it clear that appellant, a consumer of dolls, is not entitled to bring a cause of action. So why should that be so? In antitrust law, if you were, in many contexts, thinking about which is a better plaintiff, the competitor or the consumer, in general, the consumer is the favored plaintiff, even though much of the harm works through effects on rivals. Your view here is that I'm not going to dispute right now that there doesn't seem to be any recognition of this. But why should the consumer be out of luck as a challenger? Well, first, that's the body of law in cases that we have. But I will acknowledge my entire career I've been a trademark attorney. I don't know a lot about antitrust. I don't know a lot about patents, despite having been a trademark examiner at the Patent and Trademark Office. Trademark is inherently a commercial interest, even though there is, of course, a public side to that. So I just want to, I mean, I guess ask or note this. The phrase commercial interest is a, I don't know, it seems to me an unhappy phrase. Consumers have a commercial interest. You mean a seller's interest when you say commercial. If you want to put it that way. But if the tenuous chain of events that appellant theorizes could happen if the registration were to issue, competitors would inherently be impacted as well. And competitors, other manufacturers, other sellers, would have causes of action and entitlement to a claim. One answer, perhaps, to my question, why should that be so, is the better plaintiff theory. There's a better plaintiff. In antitrust, sometimes not, because sometimes the competitor is in kibbutz if it's a section one, mostly. It's a section one problem, but not so for section two. So there's a better plaintiff theory that might underlie the apparent absence of recognition of a right of a consumer to challenge a mark holder's mark. And over decades of trademark law since the Lanham Act, many applications and many registrations have been challenged by competitors on all sorts of grounds. When you say there's no case law recognizing a consumer's right to do this, is there a case law recognizing the opposite, namely recognizing the absence of this right, or are we on essentially fresh ground? Well, I think we're instructed by Lexmark to look at the statute and the zone of interest. And if we look at section 1127 of the Lanham Act, it makes it clear. I just want to, I think you're now not answering my question. When you say there's no case law, I don't see that anybody has cited any. No case law recognizing the consumer right, is there a case law saying there is no such right? I'm not aware of any case law that explicitly shuts that door. But again, under Lexmark and under Corcomore, we have to look to the zone of interest. And Corcomore applies to 1064 cancellations. And opposition is, in almost every respect, the same as a cancellation, other than the time, right before the registration issues or after the registration issues. And the language in the statute about the two claims under section 1064 and 1063 is essentially identical. There's no reason to believe that, as applied in Corcomore, Lexmark wouldn't also apply to an opposition under the Lanham Act. By the way, did you say you're not really familiar with patent law? I did say that. Oh, OK. For the reasons set forth today and in our brief, we ask the court to affirm the decision of the board. And I'll see the rest of my time to my friends from the USPTO, unless there's other questions. I think your friend might be familiar with patent law. You're right. Good morning, your honors, and may it please the court. The board correctly applied Lexmark's zone of interest to a trademark opposition proceeding under this court's case law. This court held that Lexmark applies in cancellation proceedings and that the similarities linguistic and functional between cancellation proceedings and opposition proceedings mandate the same requirements. This court held in Corcomore that a cancellation proceeding is a cause of action. And to the extent that's the binding precedent of this court, the same applies to opposition proceedings. An opposition proceeding is an adjudication at the office where a person petitions for cancellation of the opposition. So it's an adversarial proceeding, and the TTAB makes the decision. So there's no reason to distinguish cancellation and opposition proceedings from a cancellation proceeding. And there are ways that consumers can participate in the examination process. There's letters of protest that Curtin could have filed both before and after publication of the Rapunzel mark, which would have been the situation like notice and comment, where a consumer who doesn't have to have any sort of statutory standing, meaning that in the old traditional way, to bring those sort of letters of protest that will be considered. What would have happened if there had been a letter of protest? Is the examiner free to ignore it? If there had been a letter of protest, after publication, it would have been a prima facie case of merely descriptive. And if it meant that it would have been gone to the examiner, the examiner would have had jurisdiction then to consider the letter of protest and consider it. An obligation to consider it? Or just authority to consider it?  I mean, an obligation to authority, it would have been, it's not part of the public record, but the examiner will consider it. And if it was, if it came from petitions. No, I think you understand the distinction. The examiner could read it and say, this is interesting, into the trash. The examiner would consider it. I would say the examiner will consider it. If it goes to the examiner after publication, it had met a prima facie case of showing merely descriptive, the examiner would consider it. And obviously there are also inherent authority in the agency to reconsider decisions in cases where we think that the mark does not meet the statute of provisions of the Lanham Act. Yeah, can you elaborate on that? I think you did have a page or two or something in your brief saying, really, there's gonna be a trademark on Rapunzel? Really? So, but don't worry about that. We can still do something. Can you explain what you can still do? So we just want to make clear to this court that the merits are not before this court, and that the agency does have inherent authority to reconsider the Rapunzel mark in light of all the evidence that's been produced in the summary judgment briefing in this opposition proceeding. And as a formal matter, how would that work? So if we were to affirm, this is what a dismissal of the opposition, does the TTAB have to give the examiner, return the matter to the examiner, or what's supposed to happen? In the TMEP, the procedures, it says that if the director becomes aware of it, that the director will provide jurisdiction to the examiner to give a new refusal, and that will be the examiner's decision. So that is the process that's allowed out in the procedures. How does the director become aware of it? Well, the director is representing the decision in court, so the director is aware of the decision. The director is actually going to get notice of this particular case? There's no, I mean, the formal process, what goes on to make people aware, I'm not entirely sure, I just know that the agency is aware of this decision, and the mark and the evidence that's been produced in this opposition proceeding. And while no decision, at this point, no decision has been made, the agency is aware of it and has an inherent authority to reconsider the decision after the publication. Are we gonna get this case again when the director changes her mind and says no trademark and get an appeal? If there's a refusal and it goes to the TTAB and they appeal to this court, yes, there could be, this case could reappear on the merits for this court. So in your opening remarks, you, I think, carefully and repeatedly included the phrase under this court's precedent, put aside this court's precedent now, and I want to understand why the other side is wrong, precedent aside, or this court's precedent aside, on the two things that I guess I'm interested in. One is the distinction between a ability to go to court and an ability to go to the agency. And second, why it should or should not make sense that a consumer, plausibly harmed by a wielding, a mark holder's wielding of an invalid mark, shouldn't be able to or has never been recognized to be able to challenge that mark. Okay, starting with the first, this gets at the idea of this being a cause of action in court versus brought before the PTO. I mean, Corker-Moore did say it was a cause of action. The distinction that Hurton wants to make is it's not a right of action in court versus in the administrative agency. Before Lexmark, this court has always applied a test to whether someone can bring an opposition or cancellation proceeding, the real interest test and reasonable belief in damages, without calling the cancellation or opposition proceeding a cause of action. It was just that under 1063, the person who would be damaged is someone who had a real interest in the proceeding, not just an intermurder who was interested in the purity of the register and a reasonable belief in damages. And this court held in Corker-Moore that that is essentially the same test. It's not substantively different than the zone of interest test and proximate causation. So whatever language this court uses, a cause of action or statutory standing is what it used to be called, it's some interpretation of 1063, a statutory interpretation of who then is entitled to bring a cancellation or opposition proceeding. And the distinction between whether it's in court or whether it's in the PTO doesn't really, it doesn't make a difference in terms of how this court has been adjudicating who gets that entitlement. Okay, what about the more substantive right question? The idea that consumers and their interests just don't get to challenge the validity of a mark holder's mark, even if there's a pretty plausible story about why the presence of that mark and its wielding can harm the consumer without very much indirectness. The Congress's intent in passing the Lanham Act and the purposes put in 1127 are really interests in unfair competition, preventing deceptive marks and deceptive associations. And those interests, as the Supreme Court held in Lexmark, are commercial interests. They're the interests of the people who are acting in commerce and not those- And here again, by here you mean, here you're somehow weirdly, to my mind, excluding the consumer from having a commercial interest. You mean seller's interest. I'm thinking of a commercial interest as sellers in the marketplace and the consumer is having an economic interest. They have an economic interest and harm. But if you said they have a commercial interest, then the definition of commercial sort of disappears. I think commercial interest, as this Court has said in Lucia, the case we provided in the 28J letter, is that the intent of Congress was to give competitors and people with commercial interests a cause of action. It just seems kind of odd given that so much of whether a trademark can be registered or not under the due factors, particularly revolve around what the consumers are going to, how they're going to understand the mark. So if it's so intricately intertwined with the law, why wouldn't they have a statutory cause of action under this? They're of interest in likelihood of confusion because it's the sellers who don't want to get their consumers to be confused. So they have an interest in, and the determination is what the people in the marketplace will think when they see those marks. But that still doesn't give even the hoodwinked consumer who bought the wrong product a cause of action, and that's what the Supreme Court says. Is the difference between this and IPR is just statutory language? I think that's right, because the IPR is any person except the patent owner can bring an IPR. And this is any person too, but then it has that qualifying language, which you think is enough to narrow the category of any person. Right, any person who believes they would be damaged by registration of the mark. And ever since Lipton in 1982, this court has always not read that literally, but to be a person who has a real interest and reasonable belief in damages. So that's the difference. It's the statutory grant that gets someone into the agency to bring an adjudicate procedure. Unless this court has any other questions. Thank you. Thank you. Couple points, Your Honors. We don't disagree that a lot of this comes down to the language of the statute, and that there are limits placed on it. The issue is that in Ritchie and going back to Lipton, it's always about limiting it to the context of the agency, what matters of that particular body. And that's the distinction between Lexmark and what happens before an administrative agency. With regard to the purposes of the Lanham Act, it absolutely has everything to do with consumers. That consumers are a huge part of it. And in fact, going back to Park and Fly, the Supreme Court's decision on that, they recognize that a big part of the purpose of the Lanham Act is to protect the interest of consumers in getting the products they want and seeking out the information that they want about competing products. Same with the Seventh Circuit's decision in door systems, where they recognize that if you had a generic mark, essentially you're impacting consumers by taking away their ability to find out which products they want and how to get at those particular products. So the interest of the consumers are at the heart of the Lanham Act. And to exclude them arbitrarily doesn't make a lot of sense, in our opinion. So if you look at that, what is it, 1127 paragraph about the intent of this chapter, which is the item on that list that you think best captures the interest here? A lot of those, probably the deceptive marks in making sure that the marks aren't used improperly is probably one of them. But there are other interests, as in that Park and Fly recognized. Park and Fly comes before Lexmark. It recognized that a purpose of the Lanham Act is to ensure that consumers have access to the products they want. And the Senate report itself says that a purpose of the Lanham Act is to protect the interests of consumers in getting the products they want. And with respect to the commercial interest, we absolutely agree. There is a commercial interest. She says that the prices are gonna go up and as a consumer, that impacts her. The Lanham Act defines commerce to be the broadest extent that Congress can have. Anything in commerce, what all my colleagues are doing is trying to limit it down to businesses and business interests, but it goes beyond that. It goes to consumers as well as to businesses. And for these reasons, we ask that you reverse and remand. Thank you. Thank you. Thanks to all counsel. The case is submitted.